## Appeal of THE BAIRD MACHINE CO.

Docket No. 201.    Submitted January 20, 1925.    Decided October 28, 1925.

> 1. During the years 1919 and 1920, the taxpayer owned directly or controlled through closely affiliated interests substantially all the stock of the Portland Foundry Co. and the Autoyre Co. and was affiliated with the latter companies.
> 2. In the absence of proof of value at the time paid in, or on March 1, 1913, of patents acquired for stock, disallowance by the Commissioner of a deduction for exhaustion is approved.

*Albert Mannheimer, Esq.*, for the taxpayer.
*P. S. Crewe, Esq.*, for the Commissioner.

### Before Ivins,[1] Korner, and Marquette.

This is an appeal from the determination of a deficiency in income and excess profits taxes for the years 1919 and 1920, in the amount of $10,286.06, arising from the disallowance by the Commissioner of taxpayer's claim that, during the years 1919 and 1920, it was affiliated with the Portland Foundry Co. and the Autoyre Co., and from the refusal of the Commissioner to allow the taxpayer deduction for exhaustion of patents.

#### FINDINGS OF FACT.

1. The Baird Machine Co., hereinafter called the Machine Company, is a Connecticut corporation, having its principal offices at Bridgeport. It was incorporated in 1894 and has been engaged since that time in the business of designing and manufacturing special automatic machinery and wire articles. The company's plant was originally located at Oakville, Conn., but in 1912 it moved its machine manufacturing business to Bridgeport, leaving that part of its plant used for the manufacture of wire articles at Oakville. This latter business was, about that time, separately incorporated as the Autoyre Co.

2. The voting capital stock of the machine company, in the amounts of 2,000 shares in the year 1919 and 4,000 shares in the

---

[1] This decision was prepared during Mr. Ivins's term of office.

year 1920, was closely held, 86.35 per cent thereof being held and owned during the years 1919 and 1920 by C. L. Warner and his son, wife, and brother. B. J. Calkins, assistant secretary of and accountant for the company, owned 25 shares during the year 1919 and 50 shares during the year 1920. Calkins had purchased the 25 shares owned by him in the year 1919 from C. L. Warner, giving his note therefor, payable on demand, and during the years 1919 and 1920 this stock was in the possession of Warner and was held by him as security for the note referred to, under a written agreement dated June 18, 1917, by the terms of which Warner had the right to vote the stock or to purchase it at any time for an amount equal to its book value. This agreement provided, in part, as follows:

Upon receipt of said stock, the said Burton J. Calkins will assign said stock to the said Charles L. Warner as collateral security for the balance due the said Charles L. Warner on the purchase price of said stock, and the said Charles L. Warner shall retain said stock and vote upon the same so long as the same remains in his hands and custody and, when same is fully paid for, he shall re-assign said stock unto the said Burton J. Calkins.

The said Charles L. Warner shall have the right at any time within five (5) years from the date of this contract, with or without reason, to repurchase the interest of the said Burton J. Calkins in said stock; and if at any time the said Burton J. Calkins shall, without fault of said The Baird Machine Company, leave the employ of said The Baird Machine Company or if at any time said stock so sold to the said Burton J. Calkins shall be owned by any other person, firm, or corporation, said Charles L. Warner shall have the right, with or without reason, to purchase said stock; * * *

The 25 additional shares owned by Calkins in the year 1920 were received by him as a stock dividend, and they were likewise held by Warner as collateral security for Calkins's note under the same conditions as the original shares owned by Calkins. Calkins received a salary of about $3,000 a year from the Machine Company.

3. The Portland Foundry Co., hereinafter called the Foundry Company, is a Connecticut corporation, organized in the year 1909 for the purpose of manufacturing iron castings. During the year 1919 it had outstanding 600 shares of voting capital stock which were owned by the Machine Company, H. C. Finkel, secretary, treasurer, and general manager of the Foundry Company, and B. J. Calkins, assistant secretary of the Machine Company, in the following amounts:

| | | |
|---|---|---|
| The Baird Machine Co | 502 shares, or | 83.67 per cent. |
| H. C. Finkel | 71 shares, or | 11.83 per cent. |
| B. J. Calkins | 27 shares, or | 4.5 per cent. |
| Total | 600 shares, or | 100.0 per cent. |

The Machine Company controlled the Foundry Company, and it placed Finkel in his position as secretary, treasurer, and general manager. Finkel purchased his stock in the Foundry Company with money loaned him by the Machine Company. He gave his promissory note, payable on demand, for the amount loaned and turned over the stock to the Machine Company as security therefor, under a written agreement containing the same provisions as the agreement between Calkins and Warner respecting the stock of the Machine Company, whereby the Machine Company was given the right to vote the stock so long as it was held as security for the payment of Finkel's note and to purchase the stock from Finkel at any time for an amount equal to its book value.

4. Finkel's stock was, at all times during the years 1919 and 1920, in the possession of the Machine Company and held by it as collateral security, as above recited, and was voted by the Machine Company until it was purchased from Finkel in the year 1923, under the written agreement mentioned. The Machine Company owned directly or controlled, by means of the written agreement with Finkel, 95.5 per cent of the voting stock of the Foundry Company.

5. Calkins had been in the employ of the Machine Company for about 15 years and his interests and those of the Machine Company were closely affiliated. He never voted his stock in the Foundry Company but always gave proxies to the Machine Company.

6. The Autoyre Co. is a Connecticut corporation, organized in the year 1912, to take over the wire business of the Machine Company at the time of the removal of a part of the plant to Bridgeport. It is engaged in the manufacture of small wire articles. During the years 1919 and 1920 it had outstanding 2,000 shares of voting capital stock which were owned by the Machine Company, B. J. Calkins, assistant secretary of the Machine Company, R. G. Stewart, secretary, treasurer, and general manager of the Autoyre Co., J. H. Cowles, president of the Autoyre Co., and F. M. Peasley, attorney for the Machine Company, in the following amounts:

| | | |
|---|---|---|
| The Baird Machine Co | 1,268 shares, or | 63.4 per cent. |
| B. J. Calkins | 244 shares, or | 12.2 per cent. |
| R. G. Stewart | 244 shares, or | 12.2 per cent. |
| J. H. Cowles | 240 shares, or | 12.0 per cent. |
| F. M. Peasley | 4 shares, or | .2 per cent. |
| Total | 2,000 shares, or | 100.0 per cent. |

7. At the time the Autoyre Co. was organized, R. G. Stewart was an employee of the Machine Company, and the Machine Company loaned him money with which to purchase his stock in the Autoyre Co.; it also made him secretary, treasurer, and general manager, in which position his annual compensation was between $7,000 and

$8,000. The Machine Company also loaned Calkins money to buy his stock in the Autoyre Co., and both he and Stewart gave the Machine Company their demand notes for the money so borrowed and delivered their stock as security under written agreements of the same tenor and effect as the written agreement mentioned above relative to the stock of Finkel in the Foundry Company. The Machine Company was in possession of and held and controlled Calkins' and Stewart's stock during the years 1919 and 1920. When the Autoyre Co. was organized the Machine Company, which owned and controlled practically all the capital stock, as above outlined, requested Cowles to take some stock in, and accept the presidency of, the new company. Cowles consented to do so with the understanding, to use his own words, " that I should take no active part in the business." Cowles was in reality a representative of the Machine Company and their interests were closely affiliated. Peasley's stock was given to him by the Machine Company as qualifying shares.

8. The Machine Company financed the Foundry Company and the Autoyre Co., advancing them money with which to operate, and also manufactured and furnished machinery to the Autoyre Co. The Foundry Company made all the castings used by the Machine Company. Some of the employees of the Machine Company also worked for the other two companies. The operation and management of both the Foundry Company and the Autoyre Co. were directed by the Machine Company. It dictated the policies of the other companies and named their officers.

9. Prior to March 1, 1913, the Machine Company acquired and, during the years 1919 and 1920, owned and used the following patents:

> No. 835813, dated April 8, 1908.
> No. 1031351, dated July 2, 1912.
> No. 992890, dated March 23, 1911.
> No. 1013406, dated January 2, 1912.

There is no evidence in the record either as to the cost of these patents to the taxpayer or their value, if any, on March 1, 1913.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on consent or on 10 days' notice, under Rule 50.

### OPINION.

KORNER, *Chairman:* The first question presented by the record in this appeal is whether or not The Baird Machine Co., the Portland

Foundry Co., and the Autoyre Co. were, during the years 1919 and 1920, affiliated within the purview of section 240 of the Revenue Act of 1918, and entitled to file consolidated tax returns.

The taxpayer contends that it owned directly or controlled through closely affiliated interests, during the years 1919 and 1920, substantially all of the stock of the Foundry Company and the Autoyre Co., and that the three companies should be permitted to file consolidated returns for those years. The Commissioner contends that the taxpayer did not own or control substantially all of the stock of the two subsidiary companies.

This Board has held that the control contemplated by the statute is not limited to technical legal control, but is practical or actual control, regardless of whether or not it is based on legally enforceable means. *Appeal of Isse Koch & Co., Inc.*, 1 B. T. A. 624; *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666; *Appeal of Gamon Meter Co.*, 1 B. T. A. 1124.

We are of the opinion, from the evidence in this appeal, that the Machine Company owned directly or controlled through closely affiliated interests substantially all of the stock of the Foundry Company and the Autoyre Co. It owned outright 83.67 per cent of the voting stock of the Foundry Company and 63.4 per cent of the voting stock of the Autoyre Co.; in addition, it had actual possession of and directly controlled, by means of written agreements, 11.83 per cent of the stock of the Foundry Company and 24.4 per cent of the stock of the Autoyre Co. The remainder of the voting stock of the Foundry Company, amounting to 4.5 per cent of the total number of shares outstanding, was owned and held by the taxpayer's assistant secretary. The stock in the Autoyre Co., in the amount of 12.2 per cent, not owned by the taxpayer or held and directly controlled by it under the purchase agreements, was owned by Peasley, the taxpayer's attorney, and Cowles, the president of the Autoyre Co. Peasley's stock had been given to him by the taxpayer merely to qualify him as a director of the corporation. He was employed as counsel for the taxpayer. The Machine Company induced Cowles to become president of the Autoyre Co. and take stock therein, with the understanding that he should take no active part in the business. He held his office at the pleasure of the Machine Co. We are of the opinion that the "interests" involved here were "closely affiliated interests," within the meaning of the statute as construed by this Board in the *Appeal of Rishell Phonograph Co.*, 2 B. T. A. 229, 232–233.

In view of the foregoing, it is our opinion that in the years 1919 and 1920, the Machine Company owned directly or controlled through closely affiliated interests substantially all of the stock of the Foundry Company and the Autoyre Co., and that, under the

provisions of section 240(b) of the Revenue Act of 1918, they were affiliated corporations and are entitled to have their tax liability for those years computed and determined on the basis of consolidated returns.

In its petition the taxpayer alleges that it is entitled to deductions for the years 1919 and 1920 on account of exhaustion of patents owned by it and used in its business. The evidence establishes that the taxpayer in those years owned and used four patents which it had acquired prior to March 1, 1913. However, no evidence was presented as to the cost of the patents in question or as to their value on March 1, 1913. There is no evidence whatsoever before the Board from which it can find that the taxpayer is entitled to any deduction in the years 1919 and 1920 on account of exhaustion of patents. The Commissioner's action in denying the taxpayer's claim to these deductions is therefore approved.